IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRAD LIEBERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 00 C 5662 |
| | ) | |
| TIMOTHY BUDZ, LINDA BAKER, | ) | |
| VICTORIA DOLL, DR. CAREY, | ) | JUDGE DAVID H. COAR |
| THOMAS MONAHAN, JUDY BUCHALSKI, | ) | |
| ROBERTA FEWS, and LEE STEINER, Ph.D., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Brad Lieberman, currently detained at the Department of Human Services Facility in Rushville, Illinois, pursuant to the Illinois Sexually Violent Persons Commitment Act, 725 ILCS 207/1 *et seq.*, brings this *pro se* complaint pursuant to 42 U.S.C. § 1983 in regard to his detention at either the Sheridan Correctional Center in Unit C-8, which was designated as the "SVP unit," or at the Joliet Correctional Center Annex. Defendants Linda Baker, Thomas Monahan, Judy Bukowski, and Leigh Steiner have filed a motion to dismiss.[1] For the following reasons, the Court grants in part and denies in part the motion to dismiss.

**I. Standard of Review**

In ruling on a motion to dismiss, the Court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of Plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). *Pro se* complaints are to be liberally construed.

---

[1]Defendants Timothy Budz and Dr. Carey have answered the complaint. Defendant Victoria Doll has never been served. They are therefore not parties to this motion.

*Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000).

Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The complaint's allegations must include sufficient facts to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009), *quoting Bell Atlantic*, 550 U.S. at 570. As the Seventh Circuit has explained, Plaintiff's allegations "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads [him]self out of court." *E.E.O.C. v. Concentra Health Serv., Inc.* 496 F.3d 773, 779 (7th Cir. 2007). Furthermore, a plaintiff can plead himself or herself out of court by pleading facts that undermine the allegations set forth in the complaint. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008).

## II. Facts

The following facts are drawn from Plaintiff's complaint, which the Court must accept as true for purposes of a motion to dismiss.

In Count One, Plaintiff alleges that Defendant Victoria Doll, a Security Therapy Aide ("STA") at Sheridan Correctional Center, who began her employment in early 2000, made sexually explicit comments and gestures toward Plaintiff in the common areas of the C-8 building. Plaintiff informed defendant Budz in writing of Doll's conduct and sent copies of these letters to Baker,

Monahan, and Buchalski. However, Defendants took no action, and Doll continued to make explicitly sexual advances toward Plaintiff.

On May 6, 2000, Doll allegedly sexually assaulted Plaintiff in the laundry room of C-8. Plaintiff rejected Doll, which angered her. Because she knew that any act of misconduct on the part of Plaintiff could possibly result in civil commitment for life, she falsely reported to her supervisors that Plaintiff had been stalking and harassing her. However, several staff members noticed unusual behavior on the part of Doll, such as standing in front of Plaintiff's cell for an extended period of time.

STA-II Grenoble confronted Plaintiff about Doll's charges and placed Plaintiff on lockdown on orders of Budz and Monahan. Plaintiff then told Grenoble about Doll's sexual advances and gave him a cassette tape Doll had made of herself singing and moaning in a sexual way to Plaintiff. He also turned over the love letters Doll had written to Plaintiff.

On May 8, 2000, Doll was called into Budz's office and confronted about Plaintiff's claims. Doll made a full confession and then attempted to flee. Doll was asked to resign but no other actions were taken against her. Budz treated Plaintiff as if he were responsible for being victimized by Doll.

Plaintiff claims that defendants Budz, Monahan, Buchalski, Steiner, and Baker had all been notified that Doll was making sexual advances toward Plaintiff and because of their failure to act on this information, Plaintiff was sexually assaulted on repeated occasions. Plaintiff alleges that Budz attempted to get Plaintiff to admit that he had engaged in a consenting relationship with Doll, and when Plaintiff refused, Budz locked him up for ten days.

In Count Two, Plaintiff alleges that no rational basis existed for treating civil detainees at Sheridan different from the inmates serving sentences under IDOC custody. Plaintiff claims

specifically that IDOC inmates had access to educational and vocational opportunities, job opportunities, prison yard and exercise, hot and adequate meals, clean laundry, and regular access to bathing facilities whereas civil detainees were denied either entirely or in part these services, which violated his rights under the Equal Protection Clause.

Plaintiff claims that the unit in which he was held was a dilapidated unit that had been condemned and closed as unfit for human habitation for inmates at Sheridan. He alleges that the unit, including the cell in which he was confined for up to 22 hours a day, was infested with cockroaches, rodents, and other vermin. His cell allegedly had extremely poor ventilation, was inadequately heated, and the toilets leaked water and other refuse.

The water supplying the C-8 unit was sometimes out of service for as long at three days at a time, and Plaintiff was placed on lockdown when the water was inoperable. Because toilets could not be flushed, the smell was nauseating. Plaintiff was supplied with water in a milk carton, which was visibly unsanitary and dirty.

Plaintiff was placed on lockdown for days with no written notice of the reason.

Plaintiff was denied access to the law library. His *pro se* petition for a writ of habeas corpus was denied without a hearing, and his notice of appeal was dismissed because Plaintiff did not have the ability to file appropriate pleadings with the court.

Plaintiff claims that the visitation policy violated the Equal Protection Clause because DHS security staff, who wore uniforms different from IDOC corrections staff, escorted him through the common visiting room and placed him and his visitor in a plexi-glass area in plain view of hundreds of other people. As a result, the IDOC inmates knew this was the sex offenders' visiting room, and Plaintiff and his visitors were subjected to vulgarity and put in fear of their safety.

Plaintiff avers that although the SVP Act required SVP detainees to be held under the least restrictive conditions of confinement, the conditions at Sheridan were more harsh than those of the IDOC inmates.

In Count Three, Plaintiff claims that Dr. Carey denied him his medication for his thyroid condition and that as a result he suffered constant tremors, severe headaches, and sleeplessness. He further alleges that he was experiencing severe pain and lack of mobility in his left arm and shoulder. Over his objection and without conducting any examination or taking X-rays, Dr. Carey injected Plaintiff with an extremely long syringe. Plaintiff became nauseated and began perspiring profusely. The nurse showed Dr. Carey the ampule from which he had drawn the drug, and Dr. Carey said: "I said cortisone, not [inaudible]." When Plaintiff asked which drug had mistakenly been administered, Dr. Carey replied: "It was a vitamin, it won't kill you."

Plaintiff reported to Dr. Carey that he had an open lesion on his upper cheek. Dr. Carey diagnosed it as acne and prescribed Benzoic peroxide. After Plaintiff was transferred to Joliet, he was diagnosed as having basil cell carcinoma. Although Dr. Carey had observed the lesion on four occasions over a four-to-five month period, he never called for a biopsy or referred Plaintiff to a dermatologist. As a result, Plaintiff has had to undergo numerous major surgeries.

In Count Four, Plaintiff alleges that he was forced to shower while female staff were present, who could observe him fully nude. Plaintiff claims that he was subjected to full strip searches before and after every visit in addition to routine and random strip searches. Plaintiff alleges that the strip searches were performed in non-private areas and female staff were able to view Plaintiff.

## III. Analysis

### A. Official Capacity

Defendants request that all official capacity claims against them be dismissed in conformity with the prior ruling on August 28, 2008, dismissing all official capacity claims against Defendant Budz. In his amended complaint, Plaintiff states that, although he is no longer at Sheridan and that it is unlikely that he will be returned to that facility, this renders moot any declaratory or injunctive demand for relief but not his demand for damages as a result of the alleged constitutional violations that took place at Sheridan. (Pl's Amd. Comp. at p. 19). A private party may sue a state official in his or her official capacity only to enjoin prospective action, not to receive monetary damages for past wrongs. *See Brown v. Budz*, 398 F.3d 904, 917-18 (7th Cir. 2005); *Sanville v. McCaughtry*, 266 F.3d 724, 732-33 (7th Cir. 2001).

The Court therefore grants Defendants' request and dismisses all official capacity claims against them. Plaintiff's claims will be construed against Defendants in their individual capacity.

### B. Count One: Failure to Protect from Sexual Harassment

Defendants argue that Plaintiff's claim regarding the alleged failure of Defendants to protect Plaintiff from sexual harassment by Security Therapy Aid, Victoria Doll,[2] should be dismissed because Defendants lack the requisite personal involvement.

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). The doctrine of *respondeat superior* (blanket supervisory liability) does not

---

[2] Victoria Doll has never been served and is therefore not a party to this motion.

apply to actions filed under 42 U.S.C. § 1983. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Section 1983 does not create collective or vicarious responsibility. *Id.* Supervisors cannot be held liable for the errors of their subordinates. *Birch v. Jones*, No. 02 C 2094, 2004 WL 2125416, at *6 (N.D. Ill. Sep. 22, 2004) (Manning, J.), *citing Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citations omitted).

In the instant case, Plaintiff claims that Defendants failed to intervene after he informed them in writing that Victoria Doll was sexually harassing him. However, Plaintiff cannot establish personal involvement on the part of Defendants based on letters he allegedly wrote notifying them about the misconduct. *See Crawford v. Roth*, 1994 WL 96659, *3 (N.D. Ill. 1994) (prison warden's failure to respond to inmate's letter apprising warden of misconduct by subordinates insufficient to subject warden to personal liability); *Johnson v. Snyder*, 444 F.3d 579, 583-84 (7th Cir. 2006) (letters to Director "insufficient to create a genuine issue of material fact regarding personal responsibility of Director, where Director had delegated responsibility for reviewing grievances, and there was no evidence that Director had read letters).

Moreover, even assuming that Plaintiff's letters and grievances alerted Defendants about the alleged sexual abuse, Plaintiff's response to the motion to dismiss demonstrates that Defendants did not turn a "blind eye" to the situation. Plaintiff admits that after he turned over Doll's letters and tapes, she was terminated. (Pl.'s Resp. ¶ 13.)

Plaintiff also points to several incidents of alleged sexual misconduct by guards at Sheridan

in an attempt to bolster his claim that Defendants "turn[ed] a blind eye" to the "problems at the Sheridan facility with staff/patient sexual interactions." (*Id.* ¶12.) However, the facts set forth by Plaintiff establish that, in each instance of alleged misconduct, the guard was investigated and terminated from employment. Because Plaintiff has set forth facts in his response that demonstrate that Defendants did not turn a blind eye to his complaints of sexual misconduct, the Court grants Defendants' motion to dismiss on this issue. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007) ("a plaintiff may unwittingly plead himself out of court by alleging facts that preclude recovery").

## C. Count Two

### 1. Equal Protection

Plaintiff claims that his right to equal protection under the Fourteenth Amendment has been violated because he is treated different from inmates under the custody of the Illinois Department of Corrections.

"To establish a prima facie case of discrimination under the equal protection clause, [plaintiff is] required to show that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005), *quoting McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993) (internal quotations omitted).

The Equal Protection Clause does require similarly situated individuals to be treated the same; however, it "does not require things which are different in fact or opinion to be treated in law as though they were the same." *Varner v. Monohan*, 460 F.3d 861, 865 (7th Cir. 2006) (*quoting Plyler v. Doe*, 457 U.S. 202, 216 (1982) (internal quotations omitted)). Because "the difference

between a person who has been convicted of sex offenses . . . and one who has not . . . affects neither fundamental rights nor suspect classes," the rational basis test is the applicable standard of review. *Id.* (*citing Marshall v. United States*, 414 U.S. 417 (1974)).

Plaintiff's claim that his Equal Protection rights were violated fails because Plaintiff is not similarly situated to IDOC inmates. It is well settled that "prisoners" and "non-prisoners" are not similarly situated for purposes of a Constitutional analysis. *Barichello v. McDonald*, 98 F.3d 948, 952-53 (7th Cir. 1996) ("We have found no case, however, holding that the state is powerless to distinguish between criminal and civil patients in matters of treatment."); *Rapier v. Harris*, 172 F.3d 999, 1004 (7th Cir. 1999) (pre-trial detainees are not similarly situated to convicted prisoners). The fact that Plaintiff was held in a secure facility did not equate him with an IDOC inmate or require him to be held in similarly restrictive (or less restrictive) conditions.

Plaintiff also claims that he was denied Equal Protection of the law because he and his visitors were placed in a separate "sex offender visiting room" and, as a result, were subjected to vulgarity and feared for their safety. In *Hargett v. Adams*, No. 02 C 1456, 2005 WL 399300 (N.D. Ill.) (Leinenweber, J.), the class action suit of which Plaintiff was a member, Judge Leinenweber ruled that family members were not unreasonably excluded from visiting detainees. *Id.* at *13. A litigant has one chance to sue the same parties for the same events in federal court. *See Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394 (1981) (one dispute between the same parties may be litigated only once when first judgment rendered by a federal court). A litigant is barred with respect to all claims that were, or could have been, raised in the first suit. *Montana v. United States*, 440 U.S. 147, 153 (1979). Plaintiff offers no explanation as to how the judgment in *Hargett* about the validity of the visitation regulations is not equally binding here. *See Lieberman v. Budz*, No. 03

C 2009, 2007 WL 1810493 *14 (N.D.Ill.) (Filip, J.) (ruling in *Hargett* binding on Plaintiff's visitation claim).

The Court accordingly grants Defendants' motion to dismiss as to Plaintiff's Equal Protection claims.

### 2. Due Process

Plaintiff may be attempting to make a Due Process claim in regard to his conditions of confinement. With respect to claims brought under the Due Process Clause, as a civilly committed individual pursuant to the Sexually Violent Persons Act, Plaintiff is more akin to a pre-trial detainee than a prisoner for the purpose of determining the constitutional basis for his claims. *Brown*, 398 F.3d at 910. Plaintiff's Due Process claims therefore fall under the Fourteenth Amendment, not the Eighth Amendment, which applies to similar claims brought by prisoners. *Palmer v. Marion County*, 327 F.3d 588, 593 (7th Cir. 2003); *Butera v. Cottey*, 285 F.3d 601, 605) (7th Cir. 2002); *Henderson v. Sheahan*, 196 F.3d 839, 845 n.2 (7th Cir. 2000). However, the Seventh Circuit has held that the standards of review for Fourteenth and Eighth Amendment claims are virtually identical and interchangeable. *Palmer*, 327 F.3d at 593; *Butera*, 285 F.3d at 605, n.2; *Henderson*, 196 F.3d at 845, n.2; *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001). In all these cases, the Seventh Circuit endorsed application of the Eighth Amendment's deliberate indifference standard to claims involving pre-trial detainees.

The Constitution required Defendants to house Plaintiff under "humane conditions" and to provide him with "adequate food, clothing, shelter, and medical care." *Sain v. Budz*, No. 05 C 6394, 2006 WL 539351, *2 (N.D. Mar. 3, 2006) (Conlon, J.), citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Like a pretrial detainee, a sexually violent person may not be subjected to conditions that

amount to "punishment" without due process. *See, e.g., Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004). "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982). "[D]ue process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed." *Seling v. Young*, 531 U.S. 250, 265 (2001); *West v. Schwebke*, 333 F.3d 745, 748 (7th Cir. 2003).

Plaintiff claims that the following conditions of his confinement violated the Constitution:

### a. Lack of Access to Educational and Vocational Opportunities

"There is no constitutional mandate to provide educational, rehabilitative, or vocational programs, in the absence of conditions that give rise to a violation of the Eighth Amendment." *Garza v. Miller*, 688 F.2d 480, 486 (7th Cir.1982); *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000); *Williams v. McGinnis*, 755 F. Supp. 230, 231 (N.D. Ill. 1991). Plaintiff therefore has no claim as to the lack of educational and vocational opportunities.

### b. Lack of Job Opportunities

The Seventh Circuit has determined that an inmate does not have a liberty or property interest in a job assignment. *Wallace v. Robinson*, 940 F.2d 243 (7th Cir. 1991) (*en banc*), *cert. denied*, 503 U.S. 961 (1992). Plaintiff's claim as to a lack of job opportunities is therefore dismissed.

### c. Lack of Yard and Exercise

A lack of access to exercise or recreation may rise to a constitutional violation in extreme and prolonged situations in which the lack of movement threatens the inmate's health. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996); *French v. Owens*, 777 F.2d 1250, 1355 (7th Cir.

1985). The Seventh Circuit has found that not allowing an inmate any out-of-cell exercise for a six-month period violates the Eighth Amendment. *Delaney v. DeTella*, 256 F.3d 679 (7th Cir. 2001). In the instant case, Plaintiff alleged that he was locked in his cell for up to 22 hours a day. He apparently was out of his cell for about two hours a day. He does not claim that he was unable to exercise in his cell or that the lack of more time outside his cell damaged his health. The Court accordingly grants Defendants' motion to dismiss as to this claim.

### d. Lack of Hot and Adequate Meals

An inmate is entitled to a healthy environment including "'nutritionally adequate food that is prepared and served under conditions that do not present an immediate danger to the health and well-being of the inmates who consume it.'" *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (*quoting Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1981)). However, that the food occasionally contains foreign objects or is served cold, while unpleasant, does not amount to a constitutional deprivation. *See Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985).

Plaintiff accordingly has no claim regarding a lack of hot meals. His conclusory statement that the meals were inadequate also does not survive a motion to dismiss. *See Ashcroft v. Iqbal* __ U.S. __, 129 S.Ct. 1937, 1949-50 (2009) (threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice). The Court accordingly grants Defendants' motion to dismiss as to this claim.

### e. Regular Access to Bathing Facilities

In *Davenport v. DeRobertis*, 844 F.2d 1310, 1316-17 (7th Cir. 1988), the Seventh Circuit held that one shower a week is constitutionally sufficient. In his amended complaint, Plaintiff stated that the shower room had about 35-40 shower heads and about that number of detainees would

shower simultaneously usually in the early afternoon, 7-days a week. (Pl's Amd. Comp. p. 18, n. 1.) Plaintiff therefore received more than his constitutionally-mandated one shower a week. This claim is therefore dismissed.

### f. Condemned Unit

Plaintiff claims that the unit in which he was held had been condemned and closed as unfit for human habitation for inmates at Sheridan, that the unit was infested with vermin, had extremely poor ventilation, was inadequately heated, and the toilets leaked. He also claims that the water supplying the unit was sometimes out of service and he was supplied water from a visibly unsanitary and dirty milk carton.

"[P]rison officials have a responsibility to provide inmates with a minima of shelter, sanitation and utilities--basic necessities of civilized life." *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989). Allegations of prolonged exposure to pests may rise to a constitutional violation. *See Antonelli*, 81 F.3d at 1431(sixteen months of pest infestation is a "prolonged deprivation").

Although Plaintiff does not allege that Defendants were personally aware of these conditions, he claims that it was the unit, not merely his cell, that was affected. *Antonelli*, 81 F.3d at 1428-29, held that dismissal of a *pro se* complaint on grounds of lack of active personal involvement is inappropriate when the official's position justifies an inference that the official had some direct involvement in the alleged violation. *Antonelli* concerned broad claims of unconstitutional conditions of confinement. In that case, the Court of Appeals found that an inference of involvement was justified to sustain claims asserted against certain senior officials, such as the county sheriff or the prison warden, when the claims alleged "potentially systemic," rather than "clearly localized," constitutional violations. *Id.*

The Court accordingly denies Defendants' motion to dismiss on this claim. Nonetheless, on a motion for summary judgment, Plaintiff will need to demonstrate that Defendants were deliberately indifferent to these conditions and that he suffered an injury as a result of these conditions. *Farmer*, 511 U.S. at 834.

### g. Placement on Lockdown

Plaintiff alleges that he was placed on lockdown "for days on end" without Due Process or written notice. In *Antonelli*, the Seventh Circuit held that a pre-trial detainee has "no general liberty interest in movement outside of his cell guaranteed by the Due Process Clause." *Antonelli*, 81 F.3d at 1430. Moreover, Plaintiff does not claim that the lockdowns imposed an "atypical and significant hardship in relation to the ordinary incidents of [his] confinement." *Thielman v. Leean*, 282 F.3d 478, 482 (7th Cir. 2002). The Court accordingly grants Defendants' motion to dismiss as to this claim.

### h. Access to the Courts

Inmates have a constitutional right to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, in order to state a claim, an inmate must demonstrate that the deprivation he suffered hindered his efforts to pursue a legal claim and resulted in actual injury. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (an injury exists, for example, where inadequacies at the law library might cause a plaintiff's complaint to be dismissed for failure to satisfy some technical requirement, or where he was unable even to file a complaint). *See also Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). Because the right is access to the courts rather than to legal materials or law libraries, an inmate will not have a valid claim unless the institution's authorities' conduct prejudiced a potentially meritorious challenge to his conviction, sentence, or conditions of

-14-

confinement. *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009); *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009); *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). An inmate's right of access to the courts does not bestow a duty on officials to provide a law library. *Lewis*, 518 U.S. at 350 (noting that *Bounds* did not establish a right to a law library or legal assistance); *Lehn*, 364 F.3d at 868.

In the instant case, Plaintiff claims that as a result of being denied access to the law library, his *pro se* petition for a writ of habeas corpus was denied without a hearing and his notice of appeal was dismissed because he did not have the ability to file appropriate pleadings. The fact that Plaintiff's petition was denied and his notice of appeal dismissed did not constitute prejudice. Plaintiff was able to file his petition and notice of appeal, and the state court heard them. Plaintiff therefore was not prevented from filing a potentially meritorious challenge to his conviction.

The Court accordingly grants Defendants' motion to dismiss as to this claim.

### D. Count Three: Deliberate Indifference to Serious Medical Needs

The Due Process Clause prohibits deliberate indifference to the serious medical needs of a detainee. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). However, a constitutional violation results only if officials deliberately ignore a patently serious medical need. *Johnson v. Snyder*, 444 F.3d 579, 584-85 (7th Cir. 2006); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001).

In the instant case, Plaintiff claims that Dr. Carey[3] denied him his thyroid medication, improperly treated his shoulder, and misdiagnosed as acne a lesion on his cheek, which later proved to be skin cancer.

---

[3] Dr. Carey has filed an answer to the amended complaint and is not a party to this motion.

Plaintiff argues that Defendants are personally liable because they ignored his grievances in regard to Dr. Carey's treatment. However, "non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of a [plaintiff's] medical care." *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008). Defendants therefore cannot be held liable for failing to recognize sooner that Plaintiff required treatment by a dermatologist when the facility's medical personnel did not indicate that a dermatologist or other specialist was required.

The Court accordingly grants Defendants' motion to dismiss as to this claim.

### E. Count Four

#### 1. Showering in the Presence of Female Staff

Plaintiff alleges that female staff were present while 25-40 detainees were showering. "[C]ross-gender observation of nudity in a place of detention is acceptable if it is conducted for a legitimate penological purpose. *Ehrlich v. Peters*, No. 01 C 4277, 2007 WL 4197511 (N.D. Ill. 2008) (Kocoras, J.); *see also Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003); *Johnson v. Phelan*, 69 F.3d 144, 150-51 (7th Cir. 1995). In addition, "the constitutional rights of employees to equal protection in their public employment can trump the competing constitutional right to privacy of a detained person when monitoring is a necessary adjunct of the employee's duties." *Id.; Canedy v. Boardman*, 16 F.3d 183, 187 (7th Cir. 1994). Measures will be deemed constitutionally permissible if they are designed to maintain security and order and are used for a nonpunitive purpose. *Id.; Youngberg v. Romeo*, 457 U.S. 307, 322-24 (1982). In *Ehrlich*, in addressing a similar claim brought by an individual held in the SVP program, Judge Kocoras found that "given the potential for physical harm to come to detainees while they were showering, particularly given that the detained population consisted of persons deemed sexually violent, the penological purpose of

maintaining security through the monitoring of the shower area is apparent." *Id.* Plaintiff does not allege that female staff were there for a non-penological purpose, and in fact states that they were "running the showers." (Pl's Amd. Comp. ¶ 67.)

The Court accordingly grants Defendants' motion to dismiss on this claim.

## 2. Strip Searches in the Presence of Female Staff

Plaintiff's claim regarding strip search policy at Sheridan is foreclosed by the decisions in *Hargett*, 2005 WL 399300 *16 (upholding the "room and personal searches") and *Davis v. Peters*, 566 F.Supp. 2d 790 (N.D. Ill. 2008). In *Davis*, Judge Pallmeyer found that "requiring detainees at the Sheridan TDF to be strip searched before and after visits and trips to court" did not violate the detainees' constitutional rights. *Id.* at 814.

Moreover, strip searches of male inmates in view of female staff does not rise to the level of a constitutional violation as long as the search is conducted for a legitimate penological purpose. *Calhoun*, 319 F.3d at 939; *Johnson*, 69 F.3d at 150-51. Only searches that are "totally without penological justification," unrelated to the maintenance of institutional security, or motivated by malicious intent are considered unconstitutional. *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004) (*citing Meriwether v. Faulkner*, 821 F.2d 408, 418 (7th Cir. 1987). Plaintiff has not alleged that these strip searches were "motivated by malicious intent," that they served "no penological justification," or that they were "unrelated to the maintenance of institutional security." Plaintiff merely alleged that the strip searches were "embarrassing and humiliating" which, as *Calhoun* illustrates, does not rise to the level of a constitutional violation.

The Court therefore grants Defendants' motion to dismiss as to this claim.

## IV. Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss as to Plaintiff's claims regarding failure to protect from sexual harassment; violation of equal protection; lack of access to educational and vocational opportunities; lack of job opportunities; lack of yard and exercise; lack of hot and adequate meals; lack of regular access to bathing facilities; placement on lockdown without due process; interference with access to the courts; deliberate indifference to serious medical needs; and showering and strip searches in the presence of female staff.

The Court denies Defendants' motion to dismiss in regard to Plaintiff's claim that he was housed in a condemned unit that was infested with vermin, had extremely poor ventilation, was inadequately heated, and had toilets that leaked, and Plaintiff's claim that the water supplying the unit was sometimes out of service and he was supplied water from a visibly unsanitary and dirty milk carton. Defendants are given 20 days from the date of this order to answer or otherwise plead to these remaining claims.

IT IS SO ORDERED.

_David H. Coar_
David H. Coar, Judge
United States District Court

DATED: 1/28/10